We're going to move now to Appeal 25-1416. Strike that. Appeal 24-2683. United States v. Robdarius Williams. And we're going to begin with oral argument again from you, Ms. Christensen. Thank you, Your Honor. May it please the Court, Counsel. Again, I'm Joanna Christensen and this time I represent Mr. Robdarius Williams. So the evidence in this case was insufficient to show that Mr. Williams had advanced knowledge that his co-defendants were going to brandish the firearm during the AT&T robbery. Although the standard is an uphill battle in this case, the lack of evidence was a manifest miscarriage of justice. And I think you agree plain-ear review applies here? Yes, plain-ear review does apply. I think in the sufficiency of the evidence realm, it's all a little bit the same. It's hard to delineate between sufficiency, manifest miscarriage, and plain error. So I think I'm arguing essentially that the error here was so great that it meets any standard for reversal. And you are not challenging the 924c jury instruction here, correct? No, that was correct. And that came, of course, from Rosemond and Armor. But the evidence was not sufficient. In essence, the jury got it wrong in this case. To satisfy the brandishing label, is it necessary that your client have seen the gun in someone else's hand and raised? Is it that level of specificity that would be required? You mean the gun was raised? Yes. I'm not sure that that's required for this conviction because I think the part of brandishing is the intimidation factor. So when you see other cases discussing this, the defendant at issue may not have seen it at all, was a driver like Mr. Williams was a driver, but that there was evidence that he knew beforehand that his co-defendants or co-actors were going to brandish the firearm. I'm trying to discern that line. Is it foreknowledge of intimidation using the weapon? Or where is that line? The line, admittedly, is difficult because when you're talking about using the weapon, that, of course, goes to the carry, use, possess portion. And the only thing that I can fall back on, of course, is the definition of brandishing and that intimidation factor. So it was clear, and I certainly conceded, one, that Mr. Williams participated in the robbery, and two, that he knew that a gun was possessed, certainly. But there's just not enough evidence there to show he knew beforehand that it was going to be brandished by his co-defendants in the store. So a co-defendant saying, I've got a gun in my pocket, I'm using it as a backup, but I'm not going to bring it out unless there's a problem, a statement like that would exculpate from the use of brandishing? Possibly, except for your part that said unless there's a problem. I think that might be just another step toward brandishing because it does show an intent that this gun is going to be brandished inside. But we have none of that testimony here. We have no idea. Does it make any difference that it was a rifle? It makes a difference as far as the size. It is harder. Because the reason I ask you is, you know, they went to pick up the gun before the robbery, and your client knew that they went to pick up the gun, he was with them. If it was a revolver, perhaps the robber could have put the revolver in his pocket. But I don't know why you pick up a rifle and bring it into the AT&T store if you're not intending to brandish it. Seriously, what are you going to do with a rifle? And why couldn't the jury just reach that conclusion that your client was leading the robbery, at least participating in the robbery, your client had advanced knowledge that they had picked up the rifle. It just looks a lot like armor to me. I think it is possible to conceal a rifle, and in this case, the Risper, who is the one who ultimately took it into the AT&T store, did conceal it. It was in his pants and under his sweatshirt. So it wasn't a full-length rifle, to my understanding. It is that it had a pistol handle on it, so the longer rifle handle, so it was a little bit shorter than what it was. It was a large gun. But the problem with making that leap to the size of the gun being automatically means you're going to brandish it, eviscerates the use, carry, possess portion of the statute. Yeah, I'm not saying that we just rely on that, right? I agree with that. But it's one factor. I mean, they're not robbing a gun store, right, where they're going to need perhaps a firearm for self-protection. The guy behind the counter pulls out his own gun, then they need to pull out a shootout, right? It's probably not going to be a shootout in the AT&T store. That's just my guess. Probably depends on where the AT&T store is, frankly. But in this case, no, I don't think. But again, we don't know any of that. That is simply inference and conjecture that, in my opinion, goes too far. And allowing the jury to stack those inferences on each other is a step too far in this case. And the government can't point to anything that shows that advanced knowledge for brandishing in this case. How do you get around armor? The facts here look pretty similar to our armor opinion. Well, so in armor, the defendant was clearly the leader. I think that there is some insinuation that Mr. Williams was the leader. But if you look at his conduct, he was the driver. He stole a license plate to conceal the car. It's not unusual for a leader to be a driver because then you don't get caught. Or you drive away. Exactly. If that was in the store, they got that as a smart leader. Well, but then you also have the red focus that had other people involved. There's not a lot about them in the record, but they were involved the entire time. And I think from a leader point of view, that's even a step further away, that the people in the red focus were not even seen at the AT&T store at the time of the robbery. They all circled it. So it makes more sense that the leader there was in the red focus. Mr. Williams has only been charged in this one robbery, and there were multiple other robberies. An ongoing investigation is what the jury knew. So the concept that he was the leader, I don't think is strong at all in this case. And that also goes to whether he was the It could have been, and likely was, the red focus asking about the way the store was structured because they weren't there. They couldn't see the back. They didn't know who could come out the back. Mr. Williams was sitting in the back on the side by the store and likely would have known that and not had to ask about it. So we could talk about every bit of evidence that the government posits, but it just doesn't get us toward or forward to that intent and knowledge of the brandishing beforehand. And again, affirmance in this case would substantially change the way the circuit applies 924C sections. Now, your original question was about armor. That was a jury instruction issue. The jury instruction was wrong in that case. But the court said it could not affirm based on the facts beyond a reasonable doubt. And said it's probably enough, but we're not going to do that. And then reversed and remanded for resentencing. And that is what Mr. Williams requests today. I'll reserve the remainder of my time. Thank you, Ms. Christensen. Mr. Jordan, we'll move to you now for argument on behalf of the appellee. Good morning. May it please the court. Isaac Jordan of the United States. This case is about a robbery plan that occurred during business hours with an employee present. And just like this court's precedent in Lawson, it's implausible to think that such a robbery plan would not include a firearm designed to threaten or influence the employee that was present. And you spoke about armor and those facts are similar to the facts here. The defendant in armor asked his co-defendant to bring the gun so he knew it would be there. Mr. Williams had already admitted to knowing the gun would be possessed. And Mr. Armor, or in armor, the defendant instructed the robbers who were inside the store by radio. And it's reasonable inference that the individual on speakerphone was Mr. Williams. And during that speakerphone conversation, he instructed them on what items to steal and he asked the victim about a back service road. So the evidence, it's a reasonable inference that Mr. Williams was in fact, if not the leader, he knew the plan. The phone call, you have the store employee saying the voice was deep and not a whole lot else. How can we draw a reasonable inference that it was Mr. Williams on the other end of that call? So the victim said that the voice was deeper than the two other individuals who were with him in the store. And then one of the investigating officers who testified said that Mr. Williams had a lower voice. But the inference is easier when you put the timeline together. So they get in the back room at 5.49 in some seconds. And that's when the phone call happens. At 5.50 is when the car moves closer to the location that he was asking the victim about. So the car moves to the side of the store, which is closer to the access road behind the store, which is what he was asking the victim about. But the person on speakerphone was asking the victim about during that conversation. So when you put the voices deep and low are similar and the timing of when he moved and the content of that conversation on speakerphone, I believe it's a reasonable inference that it was Mr. Williams on the speakerphone. There weren't any phone records were there to corroborate that? No. The case also matches the facts in Lawson where the firearm was immediately brandished upon entering the store. The individuals were masked, which all point to that plan including the brandishing of a firearm. And also the speakerphone conversation somewhat matches the facts from Lawson where this court pointed to the fact that the defendant in Lawson was unsurprised by the brandishing of the firearm. And in our brief we talk about how on that speakerphone conversation he would have likely heard that the individual was terrified with the gun being pointed at him. But an individual testified to how he thought he wouldn't leave the store alive. And that just goes to the inference that he knew the gun would be brandished because he continued to aid and abet after that fact. Mr. Jordan, same questions I posed to Ms. Christensen. There isn't evidence here of eyewitness holding up of the gun or pointing to the gun in an intimidation way. I understand you can rely on the jury's potential reasonable inferences here, but where is that line as to the intimidation factor when it comes in? What type of evidence is necessary to reach that intimidation conclusion that leads one to brandishing? So here we have Mr. Williams drops them off at the store and he watches them walk into the store with the rifle down his pants. And the officer testified that he saw the rifle, clearly the outline of the rifle, on the individual who was carrying the firearm. And that the individual was holding the firearm in his hand. And that suggests that he was going to brandish the firearm as he entered the store. It doesn't necessarily suggest he leaves it in there. I suppose you could argue the outline may be a fact if the employee sees the outline. But I'm trying to discern that line here as to when brandishing gets satisfied. And again, I understand you can rely on the inferences from the jury, but we've got to set some type of standard, not just for this case, but going forward. Your thoughts? Well, arguably the gun was already being displayed, which is one prong of the brandishing. And taken together with the plan to rob the store and with the employee being present, with the gun already being brandished, it's a reasonable inference that that brandishing could be then used for intimidation purposes of the employee to get him to do what you want him to do. Let me continue. If I may, I'd like to correct a thing from my brief. I mentioned that the investigation was, the jury heard evidence that the investigation was based on a series of armed robberies prior, and that, of course, was not in a stipulation. And the use of the word armed may have been an inference too far. However, the inference that the investigation was based on prior robberies is supported by the record. There's testimony that the car was being surveilled by the Indianapolis Metropolitan Police Department's covert robbery unit, which, of course, suggested it was being investigated for robberies. But if there are no further questions. No, thank you, Mr. Jordan. Ms. Christensen, we'll move back to you now for rebuttal argument. Thank you, Your Honor. The problem with Lawson and the concept that all robberies must include a firearm to get people to comply simply isn't the way all robberies work. We can't assume that every robbery is going to be a firearm. It may be more successful with a firearm, but there certainly have been successful robberies without firearms. That's a step too far. And the inference and inference and inference, going specifically to the testimony that Mr. Williams was talking while they were in the back, the testimony at trial was that he dropped them off and then drove to the back. And Tucker and Grisper spent time in front of the prior to going in the back of the store inside with Mr. Ray. So the inference that he knew what was going on is simply not supported by the evidence. And then I think the display and intimidation, we do have to draw the line when you're talking about brandishing. And it is display and intimidation for brandishing. That's kind of the boiling it down to the basics. But in this case, the question is whether Mr. Williams knew in advance that the display and intimidation was going to occur. Unless the court has further questions, I'll ask to reverse the remand. Thank you. Thank you, Ms. Christensen. Thank you, Mr. Jordan. The case will be taken in That will complete our oral arguments for the morning. Thank you.